12-985-cv
*Gabriele v. Law Office of Martha Croog, LLC*



UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 27th day of November two thousand twelve.

PRESENT:     JOHN M. WALKER, JR.,
                       DEBRA ANN LIVINGSTON,
                       CHRISTOPHER F. DRONEY,
                                  *Circuit Judges.*

———————————————————

MICHAEL V. GABRIELE,
            *Plaintiff-Appellant*,

            -v.-                                              No. 12-985-cv

AMERICAN HOME MORTGAGE
SERVICING, INC., and LAW OFFICE
OF MARTHA CROOG, LLC,
            *Defendant-Appellees.*

———————————————————

For Plaintiff-Appellant:          J. HANSON GUEST, Hartford, Connecticut

For Defendant-Appellee:         MARISSA I. DELINKS, Boston, Massachusetts, *for Defendant-Appellee American Home Mortgage Servicing, Inc.*

                                           MARTHA CROOG, Hartford, Connecticut, *for Law office of Martha Croog, LLC.*

MANDATE

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be **AFFIRMED**.

Plaintiff-Appellant Michael V. Gabriele ("Gabriele") appeals from the February 9, 2012 judgment of the United States District Court for the District of Connecticut (Eginton, *J.*), dismissing Gabriele's claims against Defendant-Appellees American Home Mortgage Servicing Inc. ("American") and the Law Office of Martha Croog, LLC ("Croog") under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.*, and his claim of intentional misrepresentation against American.  We assume the parties' familiarity with the underlying facts and procedural history of this case, which we reference only as necessary to explain our decision to affirm.

## I.    Background

This action arises from an underlying Connecticut Superior Court suit in which law firm Croog, representing Deutsche Bank National Trust ("Deutche Bank"), sought foreclosure of Gabriele's residence.  Neither Croog nor American, a loan servicing corporation, was a party to the state court foreclosure action.  During the proceedings, Gabriele moved for sanctions against Deutsche Bank, complaining that Deutsche Bank had prematurely filed two motions for default judgment and had failed to forward an exhibit attached to the complaint.  The state court summarily denied the motion.

After the state court entered a judgment of strict foreclosure on October 4, 2010, Gabriele filed the instant federal suit, claiming that Croog's and American's conduct during the course of the state foreclosure action violated the FDCPA, CUTPA, and Connecticut common law.  The operative version of the complaint describes several state court filings that Gabriele alleges were false,

2

deceptive, unfair, or harassing. These include: Croog's affirmation in the state complaint that it would serve copies of exhibits on Gabriele, and the filing of a notice of compliance with that requirement, when, according to Gabriele, Croog never forwarded an exhibit; Croog's filing of two motions for default when Gabriele was allegedly not in default; Croog's premature filing of a motion for judgment of strict foreclosure in violation of a procedural rule; and Croog's filing of three allegedly false affidavits, two of which were signed by employees of American. The district court granted the defendants' motion to dismiss on the grounds that it lacked subject matter jurisdiction to hear Gabriele's claims against Croog and that Gabriele had failed to state a claim against either defendant. This appeal followed.

## II.     Discussion

### A.     Subject Matter Jurisdiction

The district court held that the *Rooker-Feldman* doctrine barred it from hearing Gabriele's claims against Croog. "Because *Rooker-Feldman* goes to subject-matter jurisdiction, we review de novo the district court's application of the doctrine." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 83 (2d Cir. 2005). "*Rooker-Feldman* directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010) (quoting *Hoblock*, 422 F.3d at 85).

Gabriele lost in state court, and, for purposes of this appeal, we assume without deciding that *Rooker-Feldman* applies when a state trial court renders its judgment prior to the plaintiff filing suit

in federal court—irrespective of the status of the plaintiff's appeals in the state court system. Nonetheless, the *Rooker-Feldman* doctrine still does not bar Gabriele's claims against Croog because Gabriele does not complain of injuries *caused* by the state court judgment. *See McKithen v. Brown*, 481 F.3d 89, 97-98 (2d Cir. 2007) ("[T]he *Rooker-Feldman* doctrine turns not on the *similarity* between a party's state-court and federal-court claims . . . but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court."). The alleged litigation misconduct was not the product of the state court's denial of sanctions, its judgment of strict foreclosure, or any other decision rendered, but rather, was "simply ratified, acquiesced in, or left unpunished by [the state court judgment]." *Hoblock*, 422 F.3d at 88. Thus, since Gabriele does not seek to undo the state court judgment through this federal action, the *Rooker-Feldman* doctrine does not apply. *See Exxon-Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293-94 (2005).

Ordinary claim and issue preclusion do not prevent federal review in this case either, since the same claims and issues were not decided in the state court. *See EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) ("[Res judicata] bars later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." (internal quotation marks omitted)); *Bear, Stearns & Co. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005) ("Collateral estoppel is permissible as to a given issue if (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." (internal quotation marks

4

omitted)).  Even assuming Gabriele's motion for sanctions in the state court complained of all the same misconduct as alleged in its federal complaint—which it did not—determining whether that misconduct amounted to substantive bad faith sufficient to warrant sanctions requires a substantially different analysis than determining whether it violated the FDCPA or CUTPA.  *Compare Fattibene v. Kealey*, 558 A.2d 677, 685 (Conn. App. 1989) (holding that in deciding whether to award sanctions, "the court must assess whether there has been substantive bad faith as exhibited by, for example, a party's use of oppressive tactics or its wilful violations of court orders"), *with Easterling v. Collecto, Inc.*, 692 F.3d 229, 233-34 (2d Cir. 2012) (per curiam) (evaluating FDCPA claim under the objective "least sophisticated consumer" standard and noting that under the FDCPA "a consumer need not show intentional conduct by the debt collector to be entitled to damages" (internal quotation marks omitted)).  In theory, Croog's alleged misconduct could have violated the statutes, but not risen to the level of substantive bad faith necessary for sanctions.  Thus, this Court is not precluded from reviewing the same misconduct pursuant to Gabriele's FDCPA and CUTPA claims.

### B.      Failure to State a Claim

We review de novo a district court judgment granting a motion to dismiss a complaint, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff.  *See, e.g.*, *Schlessinger v. Valspar Corp.*, 686 F.3d 81, 85 (2d Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

1.  **FDCPA Claim Against Croog**

Congress enacted the FDCPA "to protect consumers from deceptive or harassing actions taken by debt collectors[,]" *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002), with the purpose of "limiting the suffering and anguish often inflicted by independent debt collectors." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996) (internal quotation marks omitted). Section 1692e of the FDCPA proscribes debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" and provides a non-exhaustive list of example violations. 15 U.S.C. § 1692e. In particular, Gabriele alleges that Croog violated sections 1692e(2)(A), which proscribes "[t]he false representation of the character, amount, or legal status of any debt," 1692e(9), which proscribes "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court . . . or which creates a false impression as to its source, authorization, or approval," and 1692e(10), which proscribes "[t]he use of any false representation or deceptive means" to collect a debt. Gabriele also claims that Croog violated section 1692f, which makes illegal the use of "unfair or unconscionable means" to collect a debt. 15 U.S.C. § 1692f.

Although "[i]t is clear that Congress painted with a broad brush in the FDCPA[,]" *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989), not every technically false representation by a debt collector amounts to a violation of the FDCPA. Courts in this Circuit evaluate claims under the FDCPA according to how the "least sophisticated consumer" would understand the communication. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010). As a result, "FDCPA protection 'does not extend to every bizarre or idiosyncratic interpretation of a collection notice' and courts should apply the standard 'in a manner that protects

6

debt collectors against liability for unreasonable misinterpretations . . . .'" *Easterling,* 692 F.3d at 233-34 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)).  Additionally, several other circuit courts, as well as a number of district courts in this Circuit, read a materiality requirement into the FDCPA's prohibition of false, deceptive, or misleading practices in the collection of a debt.  *See, e.g.*, *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012) (recognizing that "courts have generally held that violations grounded in 'false representations' must rest on material misrepresentations"); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010) (finding that mislabeling in state complaint of interest owed on debt was not a material misrepresentation under the FDCPA); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009) (finding that state court complaint which mischaracterized debtor's credit-card debt as a loan was not a materially false or misleading statement under the FDCPA); *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 758 (7th Cir. 2009) (Easterbrook, *C.J.*) (holding that "a false but non-material statement is not actionable" under the FDCPA because "[a] statement cannot mislead unless it is material"); *Lane v. Fein, Such & Crane LLP*, 767 F. Supp. 2d 382, 389-90 (E.D.N.Y. 2011) (finding that misstatement in state complaint was not materially false or misleading under FDCPA); *Walsh v. Law Offices of Howard Lee Schiff, P.C.*, No. 11 Civ. 1111, 2012 WL 4372251, at *3-6 (D. Conn. Sept. 24, 2012) (adopting materiality requirement and dismissing § 1692e claims based on discovery disputes and alleged procedural misconduct in state court action).

Our case law demonstrates that communications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection, violate the FDCPA.  For example, we have held that a debt collector could be liable under the FDCPA for a false statement that a borrower's debt was

ineligible for bankruptcy, *see Easterling*, 692 F.3d at 235  ("[N]ot only is the Collection Letter's representation [that consumer's student debt was ineligible for bankruptcy] literally false, it is also fundamentally misleading . . . ."); and for falsely representing that the collector had the authority to initiate legal proceedings against the debtor, *see Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993).  *See also Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 424 (S.D.N.Y. 2010) (denying motion to dismiss FDCPA claim alleging that defendant law firm engaged in scheme to default debtors through the filing of affidavits falsely attesting that debtors had been served with complaints in debt collection suits).  We have also held that communications from debt collectors that are misleading or deceptive as to the identity or involvement of the debt collector violate the FDCPA.  *See Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 237-38 (2d Cir. 1998); *Clomon*, 988 F.2d at 1321-22 (finding that mass-produced collection letters bearing the facsimile signature and letterhead of an attorney who never actually reviewed the letters or read the consumer's files violated the FDCPA).  And debt collection practices that are contradictory, vague, or threatening create FDCPA liability as well.  *See, e.g.*, *Russell*, 74 F.3d at 35; *Pipiles*, 886 F.2d at 25-26.

Although statements made and actions taken in furtherance of a legal action are not, in and of themselves, exempt from liability under the FDCPA, s*ee Goldman v. Cohen*, 445 F.3d 152*,* 157 (2d Cir. 2006), the false statements of which Gabriele complains do not amount to the kind of misleading and deceptive practices that fall within the ambit of the FDCPA, and therefore fail to state a plausible claim.  Gabriele alleges that Croog prematurely filed two motions for default and a motion for judgment of strict foreclosure, in violation of procedural rules and deadlines set by the court, thereby forcing Gabriele to "expend unnecessary resources" defending against those motions.

8

Second Amend. Compl. ¶ 36.   But the FDCPA does not guarantee consumers an efficient or thrifty resolution of their putative debt, nor would the filing of three untimely motions interfere with a consumer's ability to answer and defend himself.  *See Walsh*, 2012 WL 4372251, at *5 ("[T]he fact that Walsh was compelled to retain counsel to defend against the debt does not transform defendants' procedural misconduct into material misrepresentations within the ambit of section 1692e.").

Gabriele also alleges that Croog falsely stated that it had forwarded both exhibits to the complaint; submitted an affidavit incorrectly representing that there were no set-offs or counterclaims; filed an unsigned affidavit; and misrepresented that Gabriele was ineligible for a federal loss mitigation program when in fact he was under consideration for such a program in mediation.  However, "[t]he hypothetical least sophisticated consumer . . . is neither irrational nor a dolt." *Ellis*, 591 F.3d at 135 (internal quotation marks omitted).  These filings, even if false, would not mislead the least sophisticated consumer, particularly represented by counsel, as here, into believing that he had already received an exhibit he had not received, that he had not filed counterclaims that he had filed three months before, or that he was not under consideration for a program he was in mediation to address.  "Where an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior." *Kropelnicki*, 290 F.3d at 128.

Ultimately, Gabriele's allegations are more akin to those in cases such as *Donohue*, 592 F.3d 1027, *Miller*, 561 F.3d 588, and *Walsh*, 2012 WL 4372251, in which the courts determined that the alleged misstatements in court filings amounted to "mere technical falsehoods that misle[d] no one."

9

*Donohue*, 592 F.3d at 1034.  Croog's affidavits and motions were not misleading or deceptive as to the nature or legal status of Gabriele's debt, nor would they have prevented the least sophisticated consumer from responding to or disputing the action.  Within the context of an adversary proceeding in state court between two represented parties, these allegations simply do not state plausible claims under the FDCPA.[1]

### 2. CUTPA Claim Against Croog

Gabriele's complaint also fails to state a claim against Croog under the CUTPA**.** "[A]lthough all lawyers are subject to CUTPA, most of the practice of law is not." *Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Investors, L.P.*, 802 A.2d 44, 53 (Conn. 2002).  The Connecticut Supreme Court has held that "[t]he noncommercial aspects of lawyering—that is, the representation of a client in a legal capacity—should be excluded [from liability under the CUTPA] for public policy reasons." *Haynes v. Yale-New Haven Hosp.*, 699 A.2d 964, 973 (Conn. 1997).  Croog's alleged misconduct, consisting of the filing of court documents, was performed as part of its legal representation of Deutsche Bank in the state debt collection action, and did not consist of entrepreneurial work such as advertising and bill collection.  Therefore, it is immune from liability under the CUTPA.  *See Suffield*, 802 A.2d at 53 ("The 'entrepreneurial' exception [to the CUTPA] is just that, a specific exception from CUTPA immunity for a well-defined set of activities—advertising and bill collection, for example.").

---

[1]  As we have recognized in past decisions, the protective purposes of the FDCPA typically are not implicated "when a debtor is instead protected by the court system and its officers." *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010) (holding that inflated proof of claim in bankruptcy court cannot form basis of FDCPA action).  In Connecticut, "the state foreclosure process is highly regulated and court controlled." *Derisme v. Hunt Leibert Jacobson P.C.*, No. 10 Civ. 23, 2012 WL 3000386, at *16 (D. Conn. July 23, 2012).  When that is the case, the state court's authority to discipline will usually be sufficient to protect putative-debtors like Gabriele from legitimately abusive or harassing litigation conduct.  *But see Sykes*, 757 F. Supp. 2d at 423-24.

The cases Gabriele cites are not to the contrary, since they involve FDCPA claims. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1608 (2010) (holding that FDCPA bona fide error defense does not apply to lawyer's incorrect interpretation of the statute's requirements); *Allen ex rel. Martin v. LaSalle Bank N.A.*, 629 F.3d 364, 369 (3d Cir. 2011) (vacating dismissal and remanding FDCPA class action brought against law firm). Although they are sometimes pled together, the CUTPA and the FDCPA are distinct statutory regimes enacted by separate sovereigns for different purposes, and they need not advance the same public policy regarding the susceptibility of lawyers to suit.

### 3. Claims Against American

The complaint includes only two factual allegations specific to American—that its employees signed two allegedly false affidavits filed in state court. As the district court held, the complaint does not allege that American acquired Gabriele's debt before it was in default and so fails plausibly to allege that American qualifies as a debt collector under the FDCPA. *See* 15 U.S.C. § 1692a(6)(F)(iii) ("The term [debt collector] does not include . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."). Moreover, even if the complaint did adequately allege that American qualified as a debt collector, the allegations regarding the affidavits fail to state an FDCPA claim against American for the same reasons that they fail to state a claim against Croog.

Relying on the same factual allegations, Gabriele claims that American committed intentional or reckless misrepresentation. He further alleges, generally, that American advised him to apply for a mortgage modification program that it knew or should have known was detrimental

to his interests, and misrepresented the amounts due on the debt.  These allegations do not give rise to a "strong inference of fraudulent intent . . . . by (1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996) (applying Federal Rule of Civil Procedure 9(b) to common law fraud claim) (internal citations omitted).  As the district court observed, the allegation that American employees signed two false affidavits—one regarding the federal loss mitigation program, and the other regarding known counterclaims—is not evidence of a motive; nor does it comprise strong circumstantial evidence of conscious misbehavior or recklessness, since it is just as plausible that the affiants made an honest mistake.  Therefore, Gabriele's intentional misrepresentation claim must fail.

Gabriele's CUTPA claim against American likewise fails because it is derivative of the FDCPA and intentional misrepresentation claims.  *See Lindbergh v. Transworld Sys., Inc.*, 846 F. Supp. 175, 181 (D. Conn. 1994); *Walsh*, 2012 WL 4372251, at *7; *Derisme* 2012 WL 3000386, at *25.

Finally, the district court did not abuse its discretion in denying Gabriele leave to amend his complaint.  *See Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2011) (reviewing motions for leave to amend for abuse of discretion).  Gabriele has already amended his complaint three times, and the district court did not err in concluding that, in these circumstances, further amendment would be futile.  *See Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999) ("[A] district court may properly deny leave when amendment would be futile.").

We have considered Gabriele's remaining arguments and find them to be without merit.  For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

13